## THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* HENRY G. FLEDDERMAN.

*Construction of the Act of 1882, ch. 22, relating to the Registration of Voters—When appeals under said Act may be tried—Jurisdiction—Lapse of Time.*

Under the Act of 1882, chapter 22, providing for the registration of voters, the Circuit Court for the counties, or any one of the Courts of Baltimore City, has jurisdiction to hear and determine an appeal from the decision of a register of voters, after the November Election, when the appeal has been taken before such election.

The jurisdiction of the Court having attached, will not be ousted by lapse of time, except by some express provision in the law or by the evident and unmistakable intent of the Act that it should not continue beyond the day of election.

, APPEAL from the Baltimore City Court.

This was an action brought by the appellee against the appellant, to recover his fees as sheriff of Baltimore City, in serving *subpœnas duces tecum*, on the clerk of the Superior Court of Baltimore City, to bring into Court the registration books in the matter of petitions to have names stricken off the books of registration under the Act of 1882, ch. 22 ; and for serving *subpœnas* on the registers of voters of the different wards of the City of Baltimore ; and for serving *subpœnas* on witnesses to testify in the matter of said petitions. The case was tried upon an agreed statement of facts, from which it appears that all

of said petitions were filed in the Baltimore City Court, before the day of the November election in the year 1886; and that the bill for said fees was duly presented to the comptroller of Baltimore City, and by him refused payment, on the ground that neither the Supreme Bench of Baltimore City, nor any Judge thereof had any jurisdiction to hear any of said petitions after the day of said election. A *pro forma* judgment was by agreement rendered in favor of the plaintiff. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*Bernard Carter, City Solicitor,* for the appellant.

The jurisdiction here conferred being a special statutory one, its existence must be affirmatively shown; and if the power claimed is not conferred upon the Court, its acts and orders are absolutely void. *Cockey vs. Cole,* 28 *Md.,* 283, 284; *Oler vs. Balto. and Randallstown Railroad,* 41 *Md.,* 590; *Mayor, &c. of Baltimore vs. Porter,* 18 *Md.,* 301, 302; *Clark and Jackson vs. Bryan and Lunt,* 16 *Md.,* 171; *Savage Manf. Co. vs. Owings,* 3 *Gill,* 499; *Campbell vs. Webb, et al.,* 11 *Md.* 481; *Thatcher vs. Powell,* 6 *Wheat.,* 119; *Elliot vs. Persol, et al.,* 1 *Peters,* 328.

It is apparent, upon the whole Act of 1822, ch. 22, that the general duty of the proper registration of voters, inclusive and exclusive, is to be discharged by the registers, appointed by the Executive Department of the State, and not by the Judicial Department; and the interposition of the action of the Courts is only exceptional.

If it was intended that the Courts should proceed to *hear* cases *after* the time fixed by law for the delivery of the poll books to the judges of election, what was the object in providing that the petitions must all be filed before that time? Is it not clear that the Legislature contemplated the correction of the lists, so far as the in-

strumentality of the Courts is concerned, for the then approaching election alone?

Can any other construction be possibly placed on the provision as to the time of the filing of the petitions?

If it was intended that the Judge of the Supreme Bench should continue at his leisure during all the winter, summer, and perhaps autumn following November, 1886, to hear these petitions, what sense was there in requiring the petitions to be filed by a time fixed prior to the election?

And how significant of intention too is the *very* time fixed for filing of the petitions. They must be filed before the poll books have gone *to the judges of election;* that is to say, if any one wishes a correction through the action of the Courts, he *must get it* before the judges of election get the books. What is this but to declare that the Legislature considers that they cannot allow any correction after the judges of election get the books; it *is then too late,* as it would lead to confusion, if nothing more. But too late *for what?* Why clearly too late for any *correction;* but there would be no danger to be apprehended by merely allowing the *filing* of petitions in the Courts, after the judges of election got the books; therefore when the petitions are required to be *filed* before the time above named, it was because the *action* consequent on filing, was also contemplated to be taken before the time named. This view seems to us so strong as to be decisive.

But other provisions of the section support it. It will be found that when the Court orders the corrections, they are to be made, either while the books are in the hands of the register, or clerk, or while they are still in the hands of the Board of Police Commissioners, by whom they are to be delivered to the judges of election. Thus showing that the *utmost time* up to which the corrections are to be made, is the time during which the Police Commissioners

have the books, which is for one week prior to the municipal election. Section 22, page 48, towards bottom.

Again, section 23 and section 26, confirm the views above presented. These sections show that it was not designed that there should be running through the year a *varying state* of the registration lists; but that the registration list shall be perfected as far as reasonably practicable, for the November election of each year, with the aid of the Judges of the Courts *up to that time;* and that this shall be the *registration* for all elections, special or otherwise, until, in the language of the concluding clause of the 26th section, another *registration* of voters, or correction thereof has been duly made. It should be noted here that if there be a *comma* placed after the word " be " in line 9 of section 23, the *sense is clear.*

It is also to be noticed that as soon as the petitions are filed, the judge 'is required *forthwith* (page 48, line 5,) to hear them—thus showing that when the time for FILING was fixed prior to the delivery of the lists to the judges of election, it was contemplated that the hearing should take place before the time so named.

Moreover, the case provided for in the first clause of section 22, would seem to be decisive in favor of our construction.

Therefore the whole proceedings of the Judge of the Supreme Bench who heard these cases after the November election, were *coram non judice,* and if so, *void;* and if void, of course the sheriff is not entitled to his fees.

Even if there were any jurisdiction in the Judge, there is no provision in the law for summoning witnesses, and therefore no warrant for so much of the sheriff's charges.

No counsel appeared for the appellee.

*John C. Rose,* filed a brief on behalf of the petitioners, with the consent of the appellant.

Mayor, &c. of Baltimore *vs.* Fledderman.

STONE, J., delivered the opinion of the Court.

The sole question presented on this appeal is whether the Circuit Courts for the counties, or any one of the Courts of Baltimore City has *jurisdiction* to hear and determine an appeal from the decision of a register of voters, *after* the November election, when the appeal has been taken *before* such election. The whole matter depends upon the Act of 1882, ch. 22, providing for the registration of voters.

It has been supposed that the Courts have no such jurisdiction to hear and decide such appeal, after the regular election in November, because the Act of 1882 provides that such appeal must be taken before such election is held.

But to this it may be answered, that in this State, and we believe we may safely say in this country, whenever an appeal is allowed to a higher Court, *some time* is always fixed within which such appeal must be taken. If the appellant does not take his appeal within the prescribed time, it will be dismissed. But if taken in time, and once properly before the Appellate Court, it is heard and tried according to the law and rules governing the trial of such cases in that Court, and without any reference to the time within which the appeal was required to be taken. This is undoubtedly the general rule, and the fact that the appeal in this case was required to be *taken* before the election, would not, of itself, imperatively require the Appellate Court to try the case before the election.

But the appellant contends that taking the whole law, it was its purpose and intent, that the registration should be perfected before the election, and that upon the delivery of the lists to the judges of election, (which is done on the morning of the election,) the power of the Courts to make corrections, is at an end, until after the next

annual sitting of the registers. To determine this question, some reference to the object of the law and its provisions, is necessary.

The general object of the registration law, is to secure to every *qualified* voter the right to vote in his proper district, and to prevent *disqualified* voters from voting.

The Act of 1882, ch. 22, the existing registration law, remedies a defect that had existed in the previous law. This law permits the duly qualified voter to apply to the register to have stricken from the lists, the names of all persons *disqualified* to vote in any particular precinct or district, and to appeal to the Courts if his application is refused by the register. While the duly qualified voter's ballot may be deposited and counted, his right to vote, so highly prized by the citizen, may be rendered comparatively valueless to him, if his vote can be nullified by fraudulent voting.

It was to prevent this, that the Act of 1882 gave to any qualified voter, not only the right to have himself registered, but to see that the lists were kept clean. An appeal is allowed, provided it is taken within the prescribed time, in all cases where a name is improperly put on or left off the list.

The appeal is taken by a petition to the Court or Judge, stating the facts, &c., and if the *petition shews a prima facie cause of complaint,* the Judge or Court orders a summons, and proceeds to try the case. The jurisdiction of the Court attaches as soon as such petition is filed within the prescribed time, and shewing a *prima facie* case. The jurisdiction of the Court having attached, will not be ousted by lapse of time, except by some express provision in the law, or the evident and unmistakable intent of the Act that it should not continue beyond the day of election. There is no such express provision, nor can we gather from the law that such was the intent of its framers.

Mayor, &c. of Baltimore *vs.* Fledderman.

It is apparent that the Act contemplated that these cases should be disposed of as soon as they possibly could. This is evident from the fact that the 22nd section requires the summons to be issued "forthwith" upon the filing of the petition, and more strongly still, by the general purpose of the law that *every* election should be fairly conducted. But the interest of the voter in a correct list, is not confined to the one election immediately following the filing his petition. There may be a special election held before the next annual correction of the list. These special elections are provided for by sections 23 and 26 of the Act of 1882. These sections provide that at such special elections, the list made at the previous October sittings of the registers, *as corrected by the Judges*, shall be the list of the qualified voters.

If for want of sufficient time, the Courts are unable to complete the correction of the lists before the annual November election, there can exist no reason either in the language or policy of the law, why it should not be completed afterwards, to be used in the event of a special election.

But it has been argued that there is no practical use in correcting the list after the annual November election, because before the next regular election the registers would again sit, and they could make the corrections. If we throw out of view entirely the contingency of a special election, still there will exist no valid reason why the correction should not be made *after* the annual election.

The Act of 1882, by prescribing a punishment for it, very clearly recognizes the possibility of fraud being practiced by the registers.

In the event of such fraud being practiced, it would be very utopian to expect the fraud to be remedied by him who perpetrated it. He could hardly be expected to undo one fall, what he had purposely done the fall before. The appeal was given as well to correct and prevent

fraud as to rectify mistakes. One method of perpetrating a fraud, is to place and keep on the list the name of a disqualified voter, and known to be such by the register. The only way to get such names off is by appeal. If the argument of the appellant is correct, and the power of the Courts over the list ends with the annual election, then if a *large number* of fraudulent names are on the lists, it is difficult to see how the fraud is ever to be remedied, without at least a change of the registration officers. The agreed statement of facts in this case shows that there are one thousand cases still unacted upon by the Courts. This fact demonstrates the impossibility of trying all the cases in the very limited time between the October sitting and the November election. These thousand cases may or may not be cases involving fraud.

If fraudulent, are they to remain there until the next election, and be voted again, and again escape striking off for want of time, or did the Legislature intend the whole list to be purified by the Courts, if the registers failed in their duty? We think there can be but one answer to this question.

It has been argued that the jurisdiction of the Courts in this matter being a special statutory one, its existence must be shown, and many cases have been cited to sustain this proposition. To this we assent. But the existence of the jurisdiction in this case is affirmatively shown by the filing of the petition. The question here is not when the jurisdiction attaches, but when it ends. No case has been shewn, or can be shewn, holding that a Court having once properly obtained jurisdiction of a case, can lose it before the trial, without some positive law to that effect.

Nor can we consider the question of costs, pressed in the argument, as having any influence in the decision of this question. If the petitioners fail in their cases, like any other plaintiffs, they are taxed with all the costs. If it is shown that the registers have acted in bad faith, they

alone are responsible for the costs.   It is only in the event that the registers are mistaken, that the costs are taxed to the city.

While it would be desirable in every case that as few burdens as possible should be thrown on the city, still the successful operation of so important a law, should not be impaired or hindered by the possible contingency of some costs falling upon the corporation.

*Judgment affirmed.*

(Decided 17th March, 1887.)