# CHARLES H. CARTER ET AL. vs. WILLIAM J. APPLEGARTH.

*Elections and Voters—List of Suspected Names—Leaving Summons at Residence as Given on Registry.*

Code, Art. 33, sec. 24, provides that when the object of a petition is to strike off from the registry of voters the name of any person alleged to be fictitious, deceased or disqualified, summons shall be issued to such person and served at the place of his residence given in the registry. *Held*, that in the case of a suspected voter the statute provides for constructive notice of the petition to strike his name off, and the leaving of the summons at his place of residence, as given in the registry, is equivalent to the service of the summons at such place, although the voter has removed therefrom.

Under Code, Art. 33, secs. 20, &c., a name upon the registry of voters suspected to be improperly there, because fictitious or because that of a person deceased or disqualified, may be stricken off without actual proof of disqualification in either one of two ways. (*a*) Any voter of a ward or county may appear before the Board of Registry and make oath that he believes the specified person upon the registry is not a qualified voter, stating the grounds of such belief, and the name is then put upon the suspected list. (*b*) When one of the officers of registration himself suspects a name to be improperly on the registry the name shall be put upon the suspected list. Other provisions relate to the giving of notice to such persons and the erasure of their names from the registry after a certain procedure *Held*, that when a party worker hands to an officer of registration a list of names as a list of suspected voters, the list not being verified by affidavit, and the officer of registration himself has no knowledge or belief as to the disqualification of such voters, but presents the list to the board of registration, it is not such a list of suspected voters as the board is authorized to act upon under the statute.

Appeal from the Court of Common Pleas (SHARP, J.)

The cause was argued before McSHERRY, C. J., PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Charles H. Carter*, for the appellants.

*Lewis Putzel* and *Jas. E. Godwin*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

In an opinion *per curiam*, filed November 3rd, 1905, it was ordered that the name of Valentine Braun, which had been stricken from the list of qualified and registered voters in the 15th Precinct of the 4th Ward of Baltimore City under an order of the Court of Common Pleas of that city be restored to said list of qualified and registered voters, and we will now state the reasons for that decision.

Valentine Braun was registered on October 11th, 1904, as a qualified voter in the 15th Precinct of the 4th Ward of Baltimore City, his residence being there given as 612 East Lombard street. The building so numbered was one of those destroyed in the great fire of February, 1904, which swept over a large section of the city and practically destroyed all the houses in that ward, but in the summer of 1904 a new house was erected upon the same site, and was numbered 612, and from that house Braun was registered. On October 10th, 1905, that being the last day of registration, about noon of that day Mr. Tapscott, the Republican executive of that ward, came to the tent in which the registers were holding their office, called out Mr. Watson, the Republican register, and handed him a list of 64 names, appearing as voters upon the registry of that precinct, as a list of suspected voters. This list was not verified by the affidavit of Mr. Tapscott, or of any other person, and was not offered to the Board of Registers for action thereon, until four o'clock that afternoon, when Mr. Watson presented it, and he testified that he only did so then because he had orders to do so from political headquarters. He also testified that he had never examined the registry to ascertain who were disqualified voters in that precinct; that he was not acquainted with the voters of that precinct and had no suspicions about those appearing on the list mentioned, and that if he had been asked to swear that they were suspected voters he could not conscientiously have done so. The name of Braun was one of those upon this list, and the cause of disqualification assigned was "Don't live there."

Before separating that evening, the Board of Registers went

over this list with the books of registration and mailed to the address of each person thereon as given in the books, the required notice to appear and show cause why they should not be stricken off, and also went in person, and served similar notices upon such persons on said list as they could find and left said notices on the premises where the persons could not be found.    Mr. Watson, together with the two Democratic registers, went to 612 East Lombard street, and not finding Braun there, left the notice with some one on the premises for him.    Braun did not appear, but he was not stricken off by the registers, because Mr. Charles H. Carter, one of the Supervisors of Election advised the board they could not properly act upon the list in question.   Thereupon Mr. Applegarth filed his petition in the Court of Common Pleas to have Braun stricken off.    The Court directed summons to be issued for Braun as required by sec 24 of Art. 33 of the Code of 1904, and this was returned "*non est* as to Valentine Braun, and summons left on premises 612 East Lombard street," and at the hearing his name was ordered stricken off, the Court being of opinion that the list of suspected voters was such a list as the law contemplated, and that the summons was properly served by leaving it on the premises.    .

With this conclusion we fully agree.   Sec. 24 of Art. 33, provides that "when the object of the petition is to strike off the name of any person alleged to be fictitious, deceased, or disqualified, summons shall also be issued to such person, which shall be served by the Sheriff within the time therein designated at the place of his residence given in the registry." *Three* classes of persons are here provided for, by *one* method of service ; if personal service were required, there could be no rational or satisfactory reason assigned for requiring such service *at* the party's place of residence, since it would be as effective if made at any other place.   As to fictitious or deceased persons, the reason for requiring service at the residence given in the registry is obvious and rational, since no personal service could be made upon either, and unless some constructive service were provided, the registry lists could

not be purged from the frauds by which fictitious names are sometimes entered, and the frauds or errors through which the names of deceased persons are sometimes retained upon the lists. It would be physically possible in some cases to give personal service to one disqualified by removal, but in most cases it would be practically impossible to do so, and we think this class of persons was wisely included with fictitious and deceased persons, under the method of constructive notice. When the law says the summons "shall be *served* at his place of residence" it clearly means it "shall be *left* at his place of residence," and this works no injustice or hardship upon the voter. If he has actually changed his place of residence without losing his right to vote in the precinct where he is registered, he can preserve his right by appearing before the registers and giving his new place of residence, and if he is temporarily absent without having changed his residence, prudence would require that he should leave his address at his residence in order that communications of importance should reach him. In either contingency the situation is one under his own control, and for which he should provide. And if he has actually changed his residence and has lost his right to vote where he is registered, he can have no cause of complaint that he is stricken off.

It must be remembered that the right of suffrage, valuable and sacred as it is, is neither a property right, nor an absolute, unqualified, personal right, of which no one may be deprived without due process of law, but that it is altogether conventional and dependent upon the regulations of the State within constitutional limitations. *Anderson* v. *Baker*, 23 Md. 620.

It cannot therefore be contended that Braun was entitled to his day in Court, as he would have been if an absolute right of person or property had been involved, and we cannot doubt that the constructive service provided by the law in this case was legal and sufficient.

But upon the other questions decided by the Court below we cannot agree with its conclusions.

Braun had been duly registered as a qualified voter in that

precinct and was entitled to remain upon the list until removed by *actual proof* of disqualification, or in strict accord with the method provided for striking off those whose disqualification is merely *suspected*. There are but two legal methods of placing a duly registered voter upon the suspected list. Sec. 20 of Art. 33, provides that: "If any voter of the ward or county shall go before the Board of Registry during its sessions and make oath that he believes any specified person upon such registry is not a qualified voter, such fact shall be noted."

Sec. 21 provides "That before separating on the last day said Board of Registry shall make out and deliver to two of their number of opposite politics a list of the registered address of all those who have been registered as qualified voters, *whom either one of the officers of registration suspects not to be qualified voters, or against whom any voter of the ward or county may have made complaint as above provided.* If said Board of Registry shall, however, *know* that any person so complained of is a qualified voter, then such name need not be put upon the list of suspected persons, unless required by a member of the board."

Sec. 23 requires the voter who makes complaint against another voter, to make oath that he believes the persons named is not a qualified voter in the precinct, and to state in the oath the grounds of such belief.

Sec. 15 provides that each Judge of Election shall also be an officer of registration in the district or precinct for which he is appointed, and sec. 11 prescribes the oath to be taken by him, in which he swears that he will "faithfully and honestly discharge the duties of an officer of registration and Judge of Election."

In the discharge of his duty as an officer of registration, he cannot honestly take action against a registered voter as a suspected person, except, first, under the sanction of an oath by some voter of the ward or county that he believes such person not to be a qualified voter; or, second, upon his own belief to the same effect, entertained and held under the sanction of his

own official oath.   There must be a genuine honest belief or well-grounded suspicion, that the voter indicated is not a duly qualified voter, and this belief or suspicion must exist either in the mind of the register of election himself, upon the responsibility of his own oath, or in the mind of the voter who makes the charge upon the responsibility of the oath required to support the charge.   And this responsibility is not only the moral obligation that goes with every oath, but the legal liability for false swearing which attends the taking of oaths required by law, and which is provided for by sec. 97 of Art. 33.   Any other construction of the suspected list in this case, would put every voter upon the registry who might happen to be absent from his residence at the time of the last sitting of the registers, at the mercy of corrupt officers or unscrupulous voters.

These are briefly the reasons which led to the conclusions we have heretofore announced in this case.

(Filed December 6th, 1905.)