# J. WALTER WILSON *vs.* CHARLES H. CARTER ET AL. BOARD OF SUPERVISORS OF ELECTIONS AND H. APSLEY.

*Elections and Voters—Striking Name From Registry—Refusal of Board to Put Name on Suspected List—Petition to Strike off Name—Jurisdiction of Court.*

Code, Art. 33, sec. 26, relating to the registration of voters, directs that the Board of Registry of a ward shall note for erasure from the registries the names of all persons known or supposed to be dead or disqualified; that the board shall treat as persons suspected as not being qualified all those against whom a sworn complaint is filed by any voter of the ward, but if a majority of the board know or are satisfied that such complaint is untrue, they need not note a name for erasure unless required by a member of the board. Other sections provide for the giving of notice to suspected voters and the striking of their names from the registry if found to be disqualified. A man handed to one of the officers of registration of a ward in Baltimore City a list of registered voters in that ward alleged by him to be disqualified. This list was not sworn to nor was the man who proposed it shown to be a voter in that ward. The officer to whom the list was given had no personal knowledge or belief as to the disqualification of the voters there named, but presented it to the board and asked that the name of a certain voter on the list be placed upon the suspected list because the house from which he registered had since been destroyed by fire. It was not alleged that this person was not a resident of the precinct. No action was taken by the board. Upon a petition to strike from the registry the name of the voter in question, *held*, that this evidence was not sufficient to require the Board of Registry to put the name on the suspected list and that the petition should be dismissed.

*Held*, further, that a single member of the Board of Registry is not entitled to require the board to put upon the list of suspected voters the name of a registered voter without any inquiry as to the cause for which he is alleged to be disqualified.

Code, Art. 33, sec. 24, provides that any person who feels aggrieved by the action of a Board of Registry in refusing to register him as a voter, or in erasing his name or that of any other person, or in registering or failing to erase the name of any fictitious, deceased or disqualified person may file a petition in Court asking to have the registry corrected. *Held*, that when a Board of Registry refuses to put the name of a registered voter upon the suspected list, the Court is without jurisdiction

to entertain a petition to strike that name from the registry. In such case the action of the board was not a refusal to erase the name of a disqualified person and no question as to the right of the voter was passed upon by the board.

Appeal from the Court of Common Pleas (WRIGHT, WICKES and SHARP, JJ.)

The cause was argued before MCSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Lewis Putzel* and *William M. Kerr*, for the appellant.

*Wm. F. Porter*, and *Charles H. Carter*, for the appellees, submitted the cause on the brief.

JONES, J., delivered the opinion of the Court.

This case arises under certain provisions of Article 33 of the Code of 1904, title Elections, prescribing regulations for the registration of voters and the correcting and purging of the registration lists. A prior reference to these provisions will conduce to a better understanding of the question here to be decided.

Section 26 of said Article provides that "in the city of Baltimore there shall be a general registration in the year 1906, and biennially thereafter. Before the November election, 1904 and 1905, and in the year 1907, and in every alternate year thereafter, the last general registration shall be revised by the Board of Registry in each precinct where such election was to be held, and for that purpose a Board of Registry shall meet on the Tuesdays respectively seven, six, five and four weeks preceding the regular election in November and shall hold a session from 9 o'clock A. M. to 9 o'clock P. M., and names may be added on the registers in the same way, upon sworn application as in the case of a general registration, and all the same forms and requirements shall be observed." Then, after prescribing what shall be done in case it shall appear that an applicant for registration has been upon the registries in any other precinct in the city of Baltimore at any

time since the beginning of the last general registration for such precinct before he shall be admitted to registration in the precinct in which his application is made, this section further provides, that "it shall be the duty of the Board of Registry, after the close of each session, to note for erasure from such registries the names of all persons known or supposed to be dead and the names of all persons who are suspected of being disqualified under sections 2 and 3 of Article 1 of the Constitution of the State, and the names of all persons who are supposed to have removed from such precinct and have not taken out removal papers and of all persons who are suspected to be otherwise disqualified as voters; and they shall before separating, make out a list of all persons so noted for erasure with the address as the same appears upon the registries. In making out such list said Board of Registry shall treat as persons suspected of not being qualified voters all persons against whom a sworn complaint is filed by any voter in the ward."

The form of the complaint is then prescribed, after which the section proceeds as follows, "if a majority of the board know, or are satisfied that such complaint is untrue they need not note such name for erasure unless required by a member of the board. Said list shall be arranged under the following headings: "Disqualified voters," under which shall be placed the names of persons suspected to be disqualified under sections 2 and 3 of Article 1 of the Constitution or otherwise; "Deceased voters," under which shall be placed all who are known or supposed to be dead; "Removed," under which shall be placed all who are known or supposed to have removed from their last address; on each day before separating said Board of Registry shall make out and deliver to two of their number of opposite politics a list of the registry addresses of all those whose names are in the registries of voters as qualified voters whom the officers of registration, in accordance with the foregoing provisions of this section, have noted for erasure. The said two officers of registration to whom such list is delivered shall thereupon proceed in respect thereto

as the provisions of sec. 21 of this Article direct, on each of the Tuesdays respectively six, five, and four weeks preceding the regular election in November. The Board of Registry in each precinct shall, at the beginning of the session, receive the report of the said two officers of registration to whom the aforesaid list was delivered at the last preceding session and shall proceed in regard thereto as directed by the provisions of sec. 22 of this Article. The Board of Registry shall again meet for revision only, on the Tuesday three weeks before said election, and a session shall be held between the hours of 9 A. M. and 9 P. M. The Board of Registry at this session shall add no new names to the registries of voters, but shall proceed as the provisions of sec. 21 of this Article direct."

Section 21 provides that the officers of registration to whom the list of voters suspected of not being qualified, made up as prescribed in sec. 26, is "delivered shall, on or before Friday next following sign a notice and send the same through the mail duly stamped to the address as given in the registry of each person who is upon" said "list requiring such person to appear before the Board of Registry upon the Tuesday following, giving the time of such session and show cause why his name should not be erased from such registers;" and that "a similar notice shall also be served by said officers upon such person before the following Tuesday, and if he cannot be found at the place designated upon said registers, the notice may be left there, if such place can be found."

Section 22 provides that, at the beginning of the session of the officers of registration to which those of the officers to whom such suspected list was delivered, are to make return of the service of notice upon the parties named on said list, said last-mentioned officers shall make affidavits as to the mailing of the notices sent by them, and to whom directed and where, and as to personal service upon such persons or as to the leaving of the same at the place of residence of such parties. If any person to whom such notice has been sent shall appear before the board of registry he is required to make affidavit in the form prescribed in said last-named section, and

the Board of Registry is authorized to examine him touching his qualification as a voter and determine his right, by a majority opinion, to remain upon the registry of the precinct. If during the last hour of the session of the board any person notified to appear in accordance with the requirements of the statute has not appeared and shown cause why his name should not be erased from the registry, his name shall be erased "unless a majority of the board are satisfied of their own knowledge or upon competent testimony that such person is entitled to have his name retained" thereon.

Section 24 provides that "any person who feels aggrieved by the action of any Board of Registry in refusing to register him as a qualified voter, or in erasing or misspelling his name, or that of any other person on the registry, or in registering or failing to erase the name of any fictitious deceased or disqualified person, may at any time, either before or after the last session of the Board of Registry, but not later than Saturday next preceding the election, if in the city of Baltimore —.—— file a petition, verified by affidavit ——— if the cause of complaint arises in Baltimore City, in any Court of Baltimore City, setting forth the ground of his application, and asking to have the registry corrected." The proceeding upon such petition is then prescribed, and in a subsequent part of the section it is provided that "exceptions may be taken to any ruling of the Court at the hearing of any such petition, and appeal allowed to the Court of Appeals as in other cases" —such appeal to be taken within five days. Section 36 provides that "any person who feels aggrieved for any of the causes mentioned in section 24 ——— which may have arisen in the course of a revision of the registration lists," "may file a petition as provided for the first general registration," and that the same proceedings shall be had thereon.

On the 4th day of November, 1905, the appellant in this case filed in the Court of Common Pleas of Baltimore City a petition alleging that he is a qualified voter of said city; that Henry Apsley who is registered as a qualified voter in the 14th Election Precinct of the 4th Ward from 119 South Fred-

erick street is not a qualified voter entitled to registration in said precinct; that on the 10th day of October, 1905, being one of the days provided in Article 33 of the Code for the registration of voters in the city of Baltimore, between the hours of 9 o'clock A. M. and 9 o'clock P. M., one Charles H. Timmerman being one of the members of the Board of Registry for said precinct submitted to the said Board of Registry the name of Henry Apsley who, he suspected, was not a qualified voter of the said precinct, and who was then upon the registration books of the said precinct as a qualified voter; that said Timmerman requested said Board of Registry to place the name and address of said Henry Apsley, 119 South Frederick street, upon the list of suspected persons of the said precinct who are not qualified voters therein; that the said Board of Registry "improperly and illegally refused to place the name and address of the said Henry Apsley  *   *   *   on the list of the suspected persons of the said precinct.  *'  *   *   and refused to take any action whatever respecting the name of the said Henry Apsley;" and prayed the Court that the name of the said Henry Apsley may be stricken from the registries of said election precinct.

Upon the hearing of the case upon the foregoing petition by the Court below evidence was taken and, on behalf of the petitioner, the Charles H. Timmerman, named in the petition, was produced as a witness and testified that he was one of the officers of registration for the election precinct mentioned in the said petition; and after stating that he was serving as such officer of registration on the 10th day of October, 1905, was asked if "a suspected list" was filed on that day and answered that there was and that the same was filed by him.  This list was produced in evidence and contained about one hundred and fifty names—among them being that of Henry Apsley, mentioned in the petition, appearing as registered from "119 S. Frederick St."  The list was arranged with headings— "Name," "Residence," "Cause of Disqualification," and under the last-named heading and opposite to the name and residence of Henry Apsley, appeared the words "building burned down."

This witness then, upon being asked if he had "any other in-
formation about the suspect voter except the fact that the
house giving his address was destroyed" answered, "The
house was destroyed, and this is all I have. That is all I
know, that the house is destroyed." The other testimony of
this witness as to the list was to the effect that he had not
made it up; that it was handed to him in the morning of the 10th
October, 1905, about half past 11 o'clock by a Mr. Tapscott;
that the office of the registers was in a tent at the corner of
Market Space and Lombard street; that Tapscott did not
come in the tent but gave the list to witness outside of the
tent; that he filed it at 20 minutes of 9 o'clock, P. M. on the
day mentioned with the Board of Registry—the other three
members of the board all being present and the board being
in session; that at 9 o'clock he "asked them whether they de-
cided who should serve the notice—they said I hadn't taken
it up and I told them I would take it up, that was twenty
minutes of nine; I said myself, I would take it up." Nothing
further appears as having been done by the Board of Registry
with respect to the list in question   The list was not sworn
to by any body.

Upon this evidence the Court below held that it was not
sufficient to require the Board of Registry to put the name of
the party, Henry Apsley, on the suspect list and to this the
appellant excepted. This is the question made by the peti-
tion and has been argued as the substantial question in the
case. After some further testimony not necessary to have
particular mention the Court ordered the petition dismissed.
We agree with the construction which the Court below gave
to the law here drawn in question. The law is to be treated as
having meaning and substance; and it is incumbent upon the
Courts, as it is upon all officials administering the law under
the sanction of their official oaths rather to be careful that the
spirit and purpose of the law are observed than to be astute
in finding reasons to support methods that may be adopted to
evade its provisions. "The general object of the registration
law is to secure every qualified voter the right to vote in his

proper district, and to prevent disqualified voters from voting."
*Baltimore* v. *Fledderman*, 67 Md. 161.   Purging the registra-
tion of disqualified voters is in the interest of the qualified
voter as being designed to secure the effectiveness of the
latter's vote.   The care of the law is, throughout its pro-
visions, for the qualified voter—the securing to him his right
to vote and the protection of him against its impairment.   It
makes careful provision that none may be admitted to the reg-
istration lists without being able to show a legal qualification
to be so admitted.   It further makes provision for striking
from the lists such as may become disqualified; but it intends
this to apply to cases of legal and actual disqualification, and
provides as far as practicable against the voter being deprived
of the right to vote by anything short of this.   These latter
provisions are important to the voter—were intended to be
effective in his interest and to be employed as prescribed.

Having more specific reference to the provisions of the elec-
tion law affecting the question being considered it will be ob-
served that there is a difference of phraseology between sec.
26, specially applicable to Baltimore City, and sec. 21, in re-
spect to providing for voting and notifying suspects.   The
language in the latter section is "whom either one of the offi-
cers of registration suspects," &c., when providing for notice to
be sent to persons suspected, &c.   In the former section it is
"of all persons who are suspected of being disqualified under
secs. 2 and 3 of Art. 1 of the Constitution ———— and of all per-
sons who are suspected to be otherwise disqualified as voters."
This difference of phraseology between the two sections in ques-
tion is not without significance.   In the counties there are only
two registration officers on duty—one to represent each of the
two principal political parties; and a reason is readily suggested
why either of them should have the right to set on foot an in-
vestigation as to suspected parties.   In the city where there is
a board of four the reason is not so obvious and does not have
as much force.   While sec. 21 seems originally to have ap-
plied to the city of Baltimore from the use of the word "ward"
therein in the connection under consideration, this does not

make the differenee in phraseology between that and sec. 26 less significant. The latter section was enacted by the Act of 1904, ch. 254 and made applicable specially to the city of Baltimore and seems as intended, in itself, to make a complete provision for the city for the noting of suspected voters. Under sec. 21 this noting was to be done and notices sent, &c., on the last day of the sitting of the registers. It is provided in sec. 26 that suspects shall be noted and notices be sent on each day of the sittings of the registers of the city. Then follow express provisions as to whom these notices are to be sent—being that which has already been mentioned—and what is to be done under sec. 21 with respect to the notices is specifically pointed out.

It seems clear therefore that when officers of registration are acting under the provisions of sec. 26 there is no ground for the contention here made that a single member of the Board of Registry can require the board to place upon the list of suspects any registered voter named by him without inquiry into the grounds of the suspicion or belief as to the disqualifying cause. The nature of the suspicion or belief which is, in any case, to be the basis of a proceeding upon the part of an officer of registration to have removed from the registration lists a person who appears thereon as a registered voter, upon the ground of disqualification, has already been defined by this Court. In the case of *Carter et al.* v. *William J. Applegarth*, October Term, 1905, 102 Md. 336, the Court speaking through JUDGE PEARCE, said that an officer of registration "cannot honestly take action against a registered voter as a suspected person, except, first under the sanction of an oath by some voter of the ward or county that he believes such person not to be a qualified voter; or, second, upon his own belief to the same effect, entertained and held under the sanction of his own official oath. There must be a genuine honest belief or well grounded suspicion, that the voter indicated is not a duly qualified voter, and this belief or suspicion must exist either in the mind of the register of election himself, upon the responsibility of his own oath, or in the mind of

the voter.who makes the charge upon the responsibility of the oath required to support the charge. And this responsibility is not only the moral obligation that goes with every oath, but the legal liability for false swearing which attends the taking of oaths required by law, and which is provided for by sec. 97, Art. 33. Any other construction of the suspected list in this case, which would put every voter upon the registry who might happen to be absent from his residence at the time of the last sitting of the registers, at the mercy of corrupt officers or unscrupulous voters."

Recurring to the evidence in this case it appears that the list offered as a list of suspected voters, upon which the name of Henry Apsley is noted, was not produced to the Board of Registry until the very last day prescribed by law for the sitting of the registers. It did not originate with the officer of registration who produced it to the Board of Registry; but was handed to the officer, who so produced it, by a person who had not sworn to it, and who is not made to appear even as a "voter of the ward." This person did not produce it to the board but handed it privately to the officer of registration who "filed it himself"—that is he adopted this list made up by another person who had not sworn to it, as the law required that he should do, when he proposed to have a registered voter noted as disqualified; and who took this means of having the list acted upon without going under the responsibility of the prescribed oath. The officer seems to have treated the matter between himself and the person who handed him the list as confidential; as he did not make the Board of Registry aware of the existence of the list until it was just concluding its session upon this last day of the prescribed sittings, and does not appear to have then made the board aware of the origin of the list.

The list set forth no fact, which, of itself, involved a cause of disqualification of the voter to vote in the precinct to which it related; but indicated, as a basis of action in the case, a fact which implied no volition on the part of the voter; and which was shown to be due to an overwhelming disaster that had

rendered houseless, and, for the time, caused to be scattered, a large number of persons who were borne upon the registration lists as qualified voters—a fact existing in connection with a condition than, which, none, under a proceeding such as the one here in question, could be better calculated to afford facility for having the names of such persons stricken from these lists irrespective of what might be their actual right as voters. Whatever may be the fact as to the right of those, upon what was filed as the suspected list in this case, to remain upon the registration lists, to give to the provisions of the election law, here in question, a construction that would establish the regularity of the proceedings in respect to it, would be to put it in the power of  *   *   *  "unscrupulous voters" and officers who might be forgetful of their oaths and willing to be used, to abuse the process of the law and pervert its provisions.

So far the case has been treated in the aspect in which it was argued, and in which it seems to have been dealt with by the Court below, because it was thought advisable that this Court should indicate its views upon the proper construction of the provisions of the election law that were drawn in question, in doing which it has only substantially reiterated views previously expressed.   It is manifest however that the order of the Court below dismissing the appellant's petition must be affirmed upon another ground—the want of jurisdiction to entertain it.   By reference to sec. 24 of Art. 33, which prescribes and regulates the right of appeal from Boards of Registry to the Courts, it will be seen that no appeal is provided from such action of a Board of Registry as is complained of in this case.

The act of the Board of Registry complained of here is that one of the members of the board submitted to the board the name of a voter whom he suspected of being disqualified, and requested that such name be placed upon the list of suspected persons as among those "who are not qualified voters" in the precinct in which the board was exercising its functions; and that the said board "improperly and illegally refused to place the name and address" of such voter "on the list of suspected persons of the said precinct who are not qualified voters"

therein "and refused to take any action whatever respecting the name of the said" voter.   The relief prayed for is that the name of the said voter (Henry Apsley) be stricken from the registry of the precinct.   It is perfectly plain that the Court of Common Pleas could grant no such relief.   No question as to the right of Henry Apsley to be upon the registration list was before, or was passed upon by the Board of Registry. There was no evidence offered or heard either by the Board of Registry or the Court of Common Pleas as to such a question; nor could there have been, because the necessary proceedings had not been had to give jurisdiction to try the question.   Before the Board of Registry could have proceeded to determine the right of Henry Apsley to be upon the lists as a qualified voter it was essential that notice should have been sent out or given as the law prescribes.   The allegation is that the Board of Registry refused to take any action whatever respecting the name of the said Henry Apsly in conformity "with the provisions requiring and regulating the sending of notices to persons proposed for erasure from the voting lists;" and therefore it could not have rightfully passed judgment upon the right of the name of Henry Apsley to remain upon the said lists.   It is shown that, as a matter of fact the board did not attempt nor profess to pass judgment upon or determine such right.

There was then no specific judgment of the Board of Registry "failing" or "refusing" to strike off the name of Henry Apsley from the registration lists; nor did it have or attempt to exercise the jurisdiction to determine in regard to that. This being so no action of the Board of Registry in "failing" or "refusing" to strike off the name in question was or could have been involved in the appeal from the Board of Registry to the Court below.   This was distinctly ruled in *Collier* v. *Carter*, 100 Md. 381.   The only action that the Board of Registry is shown or alleged to have taken or to have "failed" or "refused" to take is that it "refused to place the name and address" of Henry Apsley "on the list of suspected persons" of the precinct "who are not qualified voters" therein.

In *Collier* v. *Carter*, *supra*, we said that the jurisdiction conferred upon the Courts in appeals from the Boards of Registry under the section of Article 33 providing such appeal is a "special, limited and peculiar" jurisdiction "and is to be exercised within the limits prescribed by the statute which confers it, and strictly in conformity with the authority given thereby" (page 384). We have only therefore to examine the terms of the statute giving and regulating the right of appeal from the action of registration officers to determine whether such action as is here made the subject of complaint is made reviewable by appeal. These terms have been set out and they give the right of appeal to any person feeling "aggrieved by the action of any Board of Registry," 1st, "in refusing to register him as a qualified voter;" 2nd, in erasing or misspelling his name; 3rd, in erasing or misspelling the name of any other person on the registry; 4th, in registering the name of any fictitious, deceased or disqualified person; 5th, in failing to erase the name of a fictitious, deceased or disqualified person. We have seen that the appeal in this case could not be held as being taken from a refusal to erase the name of a disqualified person, and it is entirely clear that it is not embraced within any other of the provisions for an appeal. What is complained of here is the alleged failure or refusal of the Board of Registry to perform a duty that is preliminary and tentative. It will be seen that an appeal is provided for only in matters in which the Boards of Registry are called upon to determine specific rights and pass final judgment subject only to the right of appeal. The order of the Court below will be affirmed.

> *Order affirmed, with costs to the appellees.*